1

PAYNE & FEARS LLP
Attorneys at Law
2 Daniel F. Fears, Bar No. 110573
E-Mail: dff@paynefears.com
3 Sean A. O'Brien, Bar No. 133154
E-Mail: sao@paynefears.com
4 4 Park Plaza, Suite 1100
Irvine, CA 92614
5 Telephone: (949) 851-1100
Facsimile: (949) 851-1212

6

7 Attorneys for Defendant
THE BOEING COMPANY

8

9

10 **UNITED STATES DISTRICT COURT**

11 **CENTRAL DISTRICT OF CALIFORNIA (SOUTHERN DIVISION)**

12 SUSAN NOVAK, an individual and on behalf of all others similarly situated and
13 the general public,

14

            Plaintiff,

15

16     v.

17 THE BOEING COMPANY, a Delaware Corporation and DOES 1 through 100,
inclusive.

18

19          Defendants.

20

21

22

23

24

25

26

27

28

CASE NO. SACV09-1011 CJC(ANx)

**OPPOSITION OF DEFENDANT THE BOEING COMPANY TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Hearing Date: March 28, 2011
Time: 1:30 p.m.
Courtroom: 9B
Before Hon. Cormac J. Carney

Discovery Cut-Off: October 7, 2011
Pre-trial Conference: December 9, 2011
Trial: January 17, 2012

# **ORAL ARGUMENT**
# **REQUESTED**

**[Supporting Exhibits And Declarations of Sean A. O'Brien, Kevin Ordahl, Michael R. Gygi and Peter M. Nelson filed Under Separate Cover Concurrently Herewith]**

1

## TABLE OF CONTENTS

2

Page

3    I.   SUMMARY OF OPPOSITION ....................................................................... 1

4    II.  PERTINENT PROCEDURAL HISTORY AND FACTS SUPPORTING THE
          DENIAL OF FURTHER AMENDMENT ........................................................ 3

5
          A.   Plaintiff's Original Theory of the Case ................................................ 3
6
          B.   Plaintiff Delays For Almost A Year Before Her Counsel First Seeks To
7              Amend The Original Complaint to Assert A Proposed Claim For "Home
               Internet and Telephone" Expense Reimbursements Under Labor Code §
8              2802............................................................................................................. 5

9         C.   The Day Before Her Second Day of Deposition Plaintiff Announces She Is
               Withdrawing Her Fifth Cause of Action From the Lawsuit, But Thereafter
10             Refuses to Dismiss It................................................................................. 8

11        D.   Plaintiff And Her Counsel Then Engage In Last Minute "Flip-Flops" And
               Evasive Conduct With Respect To Dismissal of the Fifth Cause of Action
12             In Order To "Buy Time" To Solicit A Substitute Plaintiff. .................... 9

13   III. LEAVE TO AMEND SHOULD BE DENIED ................................................. 15

14        A.   Plaintiff And Her Counsel Have Acted in Bad Faith and Engaged in
               Deliberate "Stonewalling." ...................................................................... 15
15
          B.   Boeing Will Suffer Prejudice If The Proposed Amendment Is Allowed,
16             While Plaintiff Will Not If The Proposed Amendment Is Denied...................... 16

17        C.   The Proposed Amendment, Which Attempts To Maintain The Labor Code
               Section 2802 Reimbursement Claim, On its Face Is "Futile," And Also
18             Ultimately Will Be Dismissed Because Each of The Proposed New
               Plaintiffs Lacks Standing. ........................................................................ 19
19
               1.   The Fifth Cause of Action Fails As A Matter of Law................................. 20
20
               2.   None of Three Proposed New Plaintiffs Can Show He/She Has
21                  Standing To Assert The Fifth Cause of Action.......................................... 22

22   IV.  IF THE COURT DOES ALLOW THE PROPOSED AMENDMENT, THEN IT
          SHOULD ONLY BE GRANTED UPON CERTAIN CONDITIONS................................ 25
23
     V.   CONCLUSION ............................................................................................. 26
24

25

26

27

28

i

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

### FEDERAL CASES

4

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
5
    465 F.3d 946 (9th Cir. 2006).................................................................................. 15

6
*Ascon Props., Inc. v. Mobil Oil Co*.,
    866 F.2d 1149 (9th Cir. 1989)................................................................................ 15

7
*Bodner v. Oreck Direc*t,
8
    LLC, 2007 U.S. Dist. LEXIS 30408, 2007 WL 2287873 (N.D. Cal. April 25, 2007) ....... 1, 24

9
*Crawford v. Equifax Payment Services, Inc.*,
    201 F.3d 877 (7th Cir. 2000).................................................................................. 18
10

11
*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003)................................................................................ 16

12
*General Signal Corp. v. MCI Telecommunications Corp.*,
13
    66 F.3d 1500 (9th Cir. 1995), *cert. denied*, 516 U.S. 1146 (1996) ......................... 25

14
*Griggs v. Pace American Group, Inc.*,
    170 F.3d 877 (9th Cir. 1999).................................................................................. 15
15

16
*Heffelfinger v. Electronic Data Systems Corp.*,
    580 F.Supp. 2d 933 (C.D.Cal. 2008)...................................................................... 10

17
*iRise v. Axure Software Solutions*,
18
    2009 U.S. Dist. LEXIS 102189, 2009 WL 3615973 (C.D. Cal. Sept. 11, 2009) .................. 17

19
*IXYS Corp. v. Advanced Power Tech., Inc.*,
    2004 U.S. Dist. LEXIS 804, 2004 WL 135861 (N.D. Cal. Jan. 22, 2004) ........................... 17
20

21
*Jackson v. Bank of Hawaii*,
    902 F.2d 1385 (9th Cir. 1990)................................................................................ 17

22
*JJCO, Inc. v. Isuzu Motors Am., Inc.*,
23
    2009 U.S. Dist. LEXIS 105643, 2009 WL 3818247 (D. Haw. Nov. 12, 2009) ................... 15

24
*Johnson v. American Airlines, Inc.*,
    834 F.2d 721 (9th Cir. 1987).................................................................................. 19
25

26
*Jones v. United Gas Improvement Corp*,
    69 F.R.D. 398(E.D. Pa. 1975)................................................................................ 19

27
*Lockheed Martin Corp. v. Network Solutions, Inc.*,
28
    194 F.3d 980 (9th Cir. 1999).................................................................................. 15

<u>**TABLE OF AUTHORITIES**</u>
**(Continued)**

<u>**Page(s)**</u>

*Loehr v. Ventura County Community College Dist.*,
743 F.2d 1310 (9th Cir. 1984) ................................................................................... 17

*Masterson Marketing v. Lotus Int'l,*
2008 U.S. Dist. LEXIS 17696, *3, 2008 WL 667412, *1 (S.D. Cal. Mar. 7, 2008) ............ 19

*Medepalli v. Maximus, Inc.*,
2008 U.S. Dist. LEXIS 28509 (E.D Cal. Apr. 8, 2008) .......................................................... 10

*Miller v. Rykoff-Sexton, Inc*.,
845 F.2d 209 (9th Cir. 1988) ................................................................................... 19

*Montes v. Brezenoff*,
85 F.R.D 130 (S.D.N.Y. 1980) ................................................................................... 19

*Sanford v. Memberworks*,
2008 U.S. Dist. LEXIS 79189 (S.D. Cal. Sept. 29, 2008) .................................................. 24

*Saul v. United States*,
928 F.2d 829 (9th Cir. 1991) ................................................................................... 19

*Solomon v. North American Life & Casualty Ins. Co.*,
151 F.3d 1132 (9th Cir. 1998) ................................................................................... 17

*Stanford v. Home Depot USA, Inc*.,
358 Fed. Appx. 816, 2009 U.S. App. LEXIS 25758 (9th Cir. 2009) ...................................... 23

*Stuart v Radioshack Corp.*,
641 F. Supp. 2d 901 (N.D. Cal. 2009) .................................................................... 22

*Wilson v. Kiewit Pacific Co*.,
2010 U.S. Dist. LEXIS 133304, 2010 WL 5059522 (N.D. Cal. Dec. 6, 2010) ..................... 22

*Xyratex Technology, Ltd. v. Teradyne, Inc.*,
2009 U.S. Dist. LEXIS 127028 (C.D. Cal. April 10, 2009) .................................................. 15

*Zokari v. Gates*,
561 F.3d 1076 (10th Cir. 2009) ................................................................................... 17


**STATE CASES**

*Coombs v. Skyriver Communications, Inc.*,
159 Cal. App. 4th 1242 (2008) ................................................................................... 10

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

**STATE STATUTES**

Labor Code § 226 ........................................................................................... 18

Labor Code §515.5 .......................................................................................... 10

Labor Code §515(a) ......................................................................................... 10

Labor Code § 2802 ................................................................................... passim


**RULES**

FRCP 12(b)(6) .................................................................................................. 20

FRCP Rule 15(a)(2) ......................................................................................... 15

FRCP Rule 15(a) .................................................................................. 15, 16, 17

FRCP Rule 11 ........................................................................... 3,12, 22, 25

FRCP Rule 24 ................................................................................................... 19

FRCP Rule 26(a)(iii) .......................................................................................... 7

FRCP Rule 26(c) ................................................................................................ 6


**OTHER AUTHORITIES**

Schwarzer, Tashima & Wagstaffe, *California Practice Guide , Federal Civil Procedure Before Trial*, §7:197.2, (Rutter Group 2011) ......................................................... 18

1   I.   **SUMMARY OF OPPOSITION**

2

3           Plaintiff's counsel's latest request to once again amend the Complaint

4   constitutes a deliberate strategy to present a continuous "moving target" to avoid

5   dismissal and/or denial of class certification as to their original class representative.

6   It is the legal equivalent of the arcade game "whack-a-mole," where once the player

7   knocks a mole down into his hole, another immediately "pops up" somewhere else

8   to take its place.

9           At deposition Boeing has decimated the case of the original named

10  plaintiff and class representative (Ms. Novak), and before summary judgment or a

11  motion for denial of class certification can be brought, Plaintiff's counsel now wants

12  to bring in new plaintiffs and class representatives -- whose standing and ability to

13  assert the same claims are also without merit -- just to stall and start the process all

14  over.  The strategy is designed to prolong the litigation and exponentially increase

15  the legal costs to Boeing, all in the hopes that class counsel will ultimately be able to

16  extract some type of lucrative class settlement to line their own pockets.

17           Enough is enough. The procedural gamesmanship, and frankly,

18  questionable conduct, by Plaintiff's counsel must stop. Judge Patel of the Northern

19  District has expressly admonished such reprehensible conduct – *i.e.*, the solicitation

20  of clients for the <u>continuation</u> of a class action is improper, when "[i]t is clear from

21  the record that plaintiff's counsel, and not plaintiff, is the driving force behind this

22  litigation. Such a 'cart before the horse' approach to litigation is not the proper

23  mechanism for vindication of legal rights." *Bodner v. Oreck Direc*t, LLC, 2007 U.S.

24  Dist. LEXIS 30408, *5-6, 2007 WL 2287873 (N.D. Cal. April 25, 2007).

25           Defendant Boeing does not make this charge lightly. The record, as

26  presented below, indisputably establishes that the case is nothing but a lawyer-

27  manufactured lawsuit, with the only goal being to harass Boeing into a settlement.

28  Class counsel has engaged in numerous dilatory tactics since the inception of the

1    case, including thwarting their original client's mediated individual settlement,

2    delaying the completion of her deposition for eight months, and improperly using

3    this lawsuit as a vehicle to scrounge up other potential plaintiffs and class

4    representatives to substitute into the case.

5          Although the Court granted Plaintiff's last Motion to Amend without

6    oral argument, **Boeing urges the Court to entertain oral argument, and carefully**

7    **consider the record presented by this Opposition.**  If the Court does so, Boeing is

8    confident the Court will understand why Boeing's Opposition has merit, and why

9    any further amendments to the pleadings should be denied.  Furthermore, the Court

10   should make Plaintiff's counsel put forth an evidentiary showing (which they have

11   failed to do) showing why the proposed amendments are necessary and not futile.

12         This Opposition is based on several independent legal and factual

13   grounds, and can be summarized as follows:

14       •    Plaintiff and her counsel have acted in bad faith, including their

15            delay and refusal to dismiss a claim (*i.e.*, the Fifth Cause of

16            Action) that they have long known has no legal or factual merit.
     (*see* **Section III. A.***, infra*);

17       •    Boeing will be prejudiced if the proposed amendment is allowed

18            to add new individual and class representatives (expanding the

19            number of parties, issues, discovery and class definitions),

20            thereby substantially increasing the costs of the litigation and
     complexity of the case, while no prejudice has been (or can be)

21            shown by the newly proffered intervening plaintiffs as to why

22            their interests are not already adequately protected by the
     existing and original Plaintiff and class representative – Ms.

23            Novak (*see* **Section III.B***, infra*); and

24       •    Regardless if any type of amendment is allowed, the current

25            Fifth Cause of Action must nonetheless be dismissed in its
     entirety, and without leave to amend, because the original class

26            representative (Ms. Novak) repeatedly agreed in the past to

27            dismiss the claim before this Motion had been brought, and
     because her recent undisputed deposition testimony establishes

28

she lacked standing in the first place); <u>and</u> none of the newly proposed replacement plaintiffs possess standing to assert it, or alternatively, can establish a legal or factual basis, as a matter of law, to continue to prosecute it as a substitute for Ms. Novak. (***see*** **Section III.C.,** *infra*).

Alternatively, if for any reason the Court allows Plaintiff leave to amend again and assert new plaintiffs and class representatives, as well as newly pleaded classes and claims, then Boeing requests that the Court impose certain conditions upon doing so. These include the following: (1) That the Fifth Cause of Action be dismissed, without leave to amend, <u>unless</u> the three new proposed plaintiffs can first make an <u>evidentiary</u> <u>showing</u> to refute Boeing's evidence herein that none possess either standing to assert the claim, <u>and</u> also can allege the requisite elements without violating FRCP Rule 11; (2) That Boeing be allowed thirty days in which to file a responsive pleading with respect to the proposed  Second Amended Complaint; (3) That the various dates set forth in the Court's current Scheduling Order be continued and extended for at least six additional months; (4) That the newly added individual plaintiffs and class representatives be ordered to sit for and complete their depositions before any further Boeing deposition are to be taken in the case; and (5) That Plaintiff's counsel immediately amend their prior Disclosure Statement and produce all documents that they intend to rely upon with respect to these newly added plaintiffs, including all documents that support their reimbursement claims they now claim under Labor Code section 2802.

## II.   <u>PERTINENT PROCEDURAL HISTORY AND FACTS SUPPORTING THE DENIAL OF  FURTHER AMENDMENT</u>

The moving papers submitted by Plaintiff conveniently omit many pertinent facts that bear directly upon this Motion, and which need to be considered carefully by the Court before ruling.

### A.     <u>Plaintiff's Original Theory of the Case</u>

Plaintiff originally filed this action in July 2009 in California Superior

- 3 -

1    Court.  After the case was timely removed, and Plaintiff's subsequent motion for

2    remand denied, the case has proceeded in this Court.  (**Declaration of Sean A.**

3    **O'Brien ("O'Brien Decl."), ¶ 1.**)

4              For over one and a half years, this case has proceeded with a single

5    plaintiff, as both an individual and purported class action, based upon a distinct legal

6    theory.  That theory, as set forth in Plaintiff's original Complaint, is for alleged

7    violation of California's statutory wage and hour laws as to a classification of a

8    specific set of Boeing employees (*i.e.*, California-based Boeing computer

9    programmers/analysts "similarly situated" to the named Plaintiff). Plaintiff alleged

10   that she and others in the class have been misclassified by Boeing as exempt, and

11   therefore, are entitled to payment of overtime wages and penalties under California

12   law. (***See* original Complaint at ¶¶ 2-3, 17-20, 29, attached as Ex. "A" to**

13   **O'Brien Decl., ¶ 2.**)

14             Nowhere mentioned in the original Complaint was there any claim

15   asserted on behalf of Plaintiff or the purported class that they <u>also</u> were entitled,

16   under California Labor Code Section 2802, to reimbursement for the cost and

17   expense, if any, of Internet or telephone service at their home as a result of their

18   <u>voluntary</u> election to participate in Boeing's "Virtual Office and Telecommuting"

19   program.[1]

20             From its inception, class counsel has been using the lawsuit to solicit

21   new clients and potential class representatives. Early on, a "Craigslist" internet

22

23   _____

       [1] The "Virtual Office and Telecommuting" program is available to certain Boeing
24   employees, not just computer programmers/analysts.  It is not mandatory, is subject to approval by
     management, and is provided as an <u>option</u> to those Boeing employees who wish to work from
25   home or a non-Boeing facility – either full time (100% "virtual") or a couple days of the week
     ("telecommute"). Those that "telecommute" have a permanently assigned work station at a Boeing
26   facility at which they usually work three days a week, and are given the <u>option</u> to work remotely
     two days a week. Those who are 100% "virtual" under the program can work remotely the entire
27   time, but are still provided with the option of having an office work station at a Boeing facility if
     they would like. (**Declaration of Natalie A. Robbecke, ¶¶ 4-5,  previously filed as Court**
28   **Docket # 42, and attached as Ex. "P" to the O'Brien Decl. at ¶ 29, )** *See also* **Declaration of**
     **Michael R. Gygi, ¶ 4; Declaration of Kevin Ordahl, ¶ 6; Novak Depo. Testimony at pp.352-**
     **356; 379 -385, attahed as Ex. "O" to O'Brien Decl. at ¶ 24.**)

advertisement was posted by Plaintiff's counsel, which Boeing learned about in January 2010, and immediately demanded be taken down. (**O'Brien Decl., ¶ 4; Ex. "B."**)   Then, in March 2010, the parties held a private mediation in which a tentative individual settlement was reached between Boeing and the named Plaintiff, but her counsel later scuttled the settlement because it wanted to keep the case open to conduct discovery to find new plaintiffs to replace her and kept the litigation going. This Court correctly rejected this abuse of the judicial process when it denied Plaintiff's *ex parte* application trying to do so. (*See* **Court Docket ## 21-25.**)

Other abuses include delaying the start and completion of the named Plaintiff's deposition for over eight (8) months, so that her first day of deposition did not occur until October 15, 2010 (even though first noticed by Boeing for early July 2010), and then refusing to allow her to sit for a second day of deposition (or even a full 7 hour deposition), which the Magistrate subsequently ordered her to do after Boeing was forced to bring a motion to compel (*see* **Court Docket ## 36-37, 65**.), and then further delaying the second day of her deposition until February 16, 2011, which was a further delaying tactic so that it could avoid a complete dismissal of at least the Fifth Cause of Action.  (**O'Brien Decl., ¶¶ 6, 16.**)

> **B.** **Plaintiff Delays For Almost A Year Before Her Counsel First Seeks To Amend The Original Complaint to Assert A Proposed Claim  For "Home Internet and Telephone" Expense Reimbursements Under Labor Code § 2802.**

In December 2009, Plaintiff's counsel first raised the possibility of amending the Complaint to add a new claim for reimbursement by the Plaintiff under California Labor Code § 2802.  In a series of emails, in early December 2009, Plaintiff's counsel asked Boeing's counsel whether it would stipulate to a proposed amendment to the Complaint.  In response, Boeing's counsel advised that Boeing

1    was in no position to stipulate to any amendment until they were provided with a

2    draft of the proposed amended complaint to review.  (**O'Brien Decl., ¶¶ 7-9.**)

3           Thereafter it was agreed that Plaintiff's counsel would provide

4    Boeing's counsel with the proposed amended complaint <u>no later than</u> January 15,

5    2010.  That deadline came and went, and no proposed draft amended complaint was

6    ever provided to Boeing's counsel.  Nothing more was heard from Plaintiff's

7    counsel about this proposed amendment for the next nine (9) months, when a

8    proposed copy of the amended complaint was unexpectedly sent to Boeing's

9    counsel less than 24-hours before the start of Ms. Novak's first day of deposition

10   (which finally, after several delays by Plaintiff, occurred on October 15, 2010).

11   (**O'Brien Decl., ¶ 9.**)

12          Thereafter Plaintiff brought a motion to amend, which Boeing opposed

13   on several grounds, including bad faith, prejudicial delay and futility.  Nevertheless,

14   without a hearing, the Court granted the motion for leave to amend, subject to

15   certain conditions being imposed. (***See* Court Docket ## 33, 40-41, 60**.)[2]

16          Shortly after the motion for leave to amend was granted, the Magistrate

17   Judge (Zarefsky) entertained a discovery motion brought by Plaintiff against

18   Boeing, seeking the production of a contact list (*e.g.*, name, personal address and

19   telephone numbers) of current and former Boeing employees who Plaintiff

20   contended were putative class members.  Boeing opposed the motion, taking the

21   position that the Court should first order an initial notification letter, sent out by a

22   third party administrator, which would set forth a brief and neutral recital of the

23   basic nature of the case, and give the putative class members the option to "opt-out"

24

25   _____

    [2] The conditions imposed included that the existing dates set forth in the "Scheduling

26   Order" were pushed back for approximately six months.  Two other conditions that the Court
    imposed were that Boeing would have thirty days in which to file a responsive pleading to the

27   First Amended Complaint, and that within two weeks after the filing of the First Amended
    Complaint, Plaintiffs immediately would submit a Supplemental Disclosure statement pursuant to

28   Rule 26(c) setting forth all facts, witnesses and documents that would support the newly added
    reimbursement claim under Labor Code § 2802. (**See Court Docket # 60.**)

1   of having their private and confidential contact information disclosed. (**See Court**

2   **Docket # 55.**)

3           The Magistrate granted Plaintiff's motion, and did not require the

4   utilization of any initial letter notification/opt-out procedure.  Instead, Boeing was

5   ordered to produce an employee contact list (which it did), subject to a protective

6   order, that contained the names, personal addresses and telephone numbers of

7   approximately 220 current and former California-based Boeing computer

8   programmers/analysts, Level 4. Thereafter, Plaintiff's counsel used this personal

9   information to directly call, by telephone, the persons on the list. Boeing learned this

10  after several of its current employees complained that they had been called, but did

11  not want to talk with Plaintiff's counsel, and were upset that Boeing had been

12  required by the Court to produce their personal, private contact information without

13  first obtaining their consent.  (**O'Brien Decl., ¶¶ 12-13; Exs. "D"-"F."**)

14          In the meantime, Boeing received in mid-December 2010, a paltry

15  "Supplemental" Disclosure Statement prepared by Plaintiff's counsel.  It did not

16  contain any new information or factual basis to support the newly added

17  reimbursement claim. More importantly, it also did not, as required under FRCP

18  Rule 26(a)(iii),  provide  any documents supporting Plaintiff's newly added

19  reimbursement claim under Labor Code § 2802, even though it stated that Plaintiff's

20  alleged damages were "approximately $130 per month.  Boeing made repeated

21  requests for Plaintiff and her counsel to provide responsive documents (*e.g.*,

22  invoices, bills, *etc.*), relating to her newly added claim.  No further supplementation

23  of her Disclosure Statement or any documents supporting Plaintiff's reimbursement

24  claim for damages were ever produced. (**O'Brien Decl., ¶ 14.**)

25          On January 11, 2011, in connection with the upcoming second day of

26  Plaintiff's deposition, Boeing sent out a new Notice of Deposition for the named

27  Plaintiff, which contained additional document requests that pertained directly to the

28  newly added Section 2802 reimbursement claim added to the First Amended

1    Complaint.  The second day of deposition was set, by agreement of the parties'

2    counsel, for February 2, 2011. In a cover letter that was sent with the notice of

3    deposition, Boeing's counsel specifically reminded Plaintiff's counsel that Boeing

4    had repeatedly requested the production of responsive documents, and asked that

5    any such documents be produced at least five (5) business days prior to the second

6    day of Plaintiff's deposition as to allow Boeing sufficient time to prepare to examine

7    heron this newly added claim. Again, there was no response from Plaintiff's counsel

8    concerning this request. (**O'Brien Decl., ¶ 15; Ex. "G."**)

9              **C.    The Day Before Her Second Day of Deposition Plaintiff**

10                     **Announces She Is Withdrawing Her Fifth Cause of Action**

11                     **From the Lawsuit, But Thereafter Refuses to Dismiss It**

12             On February 1, 2011, the day before Plaintiff's scheduled second day

13   of deposition, her counsel notified Boeing's counsel that because of unspecified

14   "medical issues," no attorneys from their offices would be available to attend

15   Plaintiff's deposition the following day.  As a result, the second day of Plaintiff's

16   deposition was cancelled, and continued to February 16, 2011. (***Id*. at ¶ 16; Ex.**

17   **"H."**)

18             Also, on the same day - - February 1, 2011 -- Plaintiff's counsel sent a

19   separate letter announcing that the Plaintiff was no longer willing to serve as class

20   representative on her newly added claim for reimbursement under Labor Code §

21   2802; that she was withdrawing that claim both individually and as a class

22   representative; and further that her counsel were "considering whether to proceed

23   with this claim" and would notify Boeing's counsel of "our decision shortly."  In

24   addition, Plaintiff's counsel served, by e-mail, responses to the document requests in

25   Plaintiff's deposition notice, setting forth blanket objections, and refusing to

26   produce any responsive documents relating to the newly added claim. (**O'Brien**

27   **Decl., ¶ 17; Ex  "I**."")

28             On February 3, 2011, Boeing's counsel wrote Plaintiff's counsel and

demanded that the recently added Fifth Cause of Action be immediately dismissed if Ms. Novak no longer intended to pursue the claim.  When no response came, a subsequent email was sent by Boeing's counsel on February 8, 2011, again requesting that the Fifth Cause of Action be dismissed before Ms. Novak's second day of deposition. (**O'Brien Decl., ¶ 18; Ex. "J."**)

On February 14, 2011 - - two days before Plaintiff's rescheduled second day of deposition was to be taken, and two weeks after informing Boeing that Plaintiff was dropping her claim for reimbursement, Boeing's counsel once again wrote to Plaintiff's counsel demanding that Plaintiff and her counsel dismiss the reimbursement claim, and even provided a stipulated joint dismissal so that the claim could be removed from the action, therefore making it unnecessary for Boeing to prepare and examine Plaintiff on that claim at her upcoming deposition. Again, no timely response was ever received.  (**O'Brien Decl., ¶ 19; Ex. "K"**)

**D.**     **Plaintiff And Her Counsel Then Engage In Last Minute "Flip-Flops" And Evasive Conduct With Respect To Dismissal of the Fifth Cause of Action In Order To "Buy Time" To Solicit A Substitute Plaintiff.**

Then, on the evening of February 15, 2011 -- less than 24 hours before the start of Plaintiff's deposition -- Boeing's counsel received a letter via email from Plaintiff's counsel informing them that the named Plaintiff was <u>reversing</u> her position, and now still wanted to pursue reimbursement claim on behalf of herself and the purported class. The "catch" was that she would be limiting the claim to cover only a one-year period (*i.e*., Dec. 2010 to Dec. 2011), and planned on amending her complaint to do so. The letter also cryptically indicated that Plaintiff's counsel intended on moving to amend the complaint to add "an additional class representative," but did <u>not</u> indicate who that person would be, <u>or</u> which existing claims that the new class representative would be asserting. The letter concluded by asking that Boeing stipulate to the proposed amendment without even seeing it!

1    (**O'Brien Decl., ¶ 20; Ex. "L**.")

2              Also, unbeknownst to Boeing, Plaintiff's counsel had sent out a letter,

3    dated February 10, 2011 ("Feb. 10 letter"), to all the persons on the Boeing

4    employee contact list that had been produced, including those persons that had

5    previously indicated they did not want to have further contact with Plaintiff's

6    counsel. The Feb. 10 letter was sent out because Plaintiff's counsel presumably had

7    been unsuccessful in their harassing telephone calls to persons on the list, and were

8    desperate to find someone else to serve as a new class representative, or at least, to

9    replace Ms. Novak on her reimbursement claim.  The Feb. 10 letter contained

10   numerous misstatements of fact and law concerning the claims being asserted in the

11   lawsuit[3] (even Ms. Novak admitted at her deposition the next day that the letter was

12   factually misleading and false in several respects), and was directly aimed at trying

13   to <u>solicit</u> other potential class representatives: "**This is an opportunity for you to**

14   **determine whether you are eligible to receive unpaid overtime wages. Please**

15   **call the lawyers who are attempting to protect the rights of current and former**

16   **[Boeing employees]**."  (*Id.*, at, ¶ 21; Ex. "M," p. 71-73.)[4]

17             In response, Boeing's counsel immediately sent an email objecting to

18   this last minute "stonewalling" and "procedural gamesmanship," including the

19

20        [3]  For example, part of the Feb. 10 letter erroneously suggests that putative class members
     would have a misclassification/overtime/non-payment of wage claims (First and Third Causes of
21   Action) if they were making less than $103,000 a year in annual base compensation in 2006
     because Boeing was supposedly relying exclusively on the California "computer worker"
22   exemption in Labor Code §515.5 (*Id.* at ¶ 22; Ex. "M", p.71.)  Yet Plaintiff's counsel has known
     full well that Boeing's primary defense on the alleged misclassification/overtime wage claims is
23   based on the "administrative/professional" exemption in Labor Code §515(a), which applies to
     computer programmers/analysts like the Plaintiff and putative class, and requires the employee to
24   make annually only two times the California minimum wage (approximately $27,000 to $33,000
     per year during the relevant class period), which Plaintiff, as well as all putative class members
25   easily exceed.  *See e.g., Coombs v. Skyriver Communications, Inc.*, 159 Cal. App. 4th 1242
     (2008); *Heffelfinger v. Electronic Data Systems Corp.*, 580 F.Supp. 2d 933 (C.D.Cal.
26   2008)(applying California law); *Medepalli v. Maximus, Inc.*, 2008 U.S. Dist. LEXIS 28509 (E.D
     Cal. Apr. 8, 2008).

27        [4]  Boeing intends to subsequently file a separate motion with the Court to request a
     retraction of the Feb. 10 letter, sanctions, and possibly disqualification of Plaintiff's counsel in the
28   case.

1   sending out of the misleading and solicitous Feb. 10 letter to current and former

2   Boeing employees, and further noted that responsive documents supporting her

3   reimbursement claim (which she suddenly was now re-asserting at the last minute)

4   still had not been produced prior to her deposition which was to start the next

5   morning.  Further, Boeing's counsel indicated it was in no position to stipulate to

6   any amendment to the pleadings without having the opportunity first to review the

7   proposed amendments, including who was being added as a new class

8   representative, and for which existing claims this undisclosed class representative

9   would be added.  (**O'Brien Decl., ¶ 23; Ex. "N."**)

10          The next morning, about twenty minutes into Plaintiff's deposition,

11  Boeing' counsel's began examining her on the <u>reinstated</u> Labor Code § 2802

12  reimbursement claim. Her counsel immediately objected, and stated on the record

13  that "after sleeping on it overnight," Plaintiff was <u>once again reversing</u> her position,

14  and was withdrawing the claim from the case!  At that point, Boeing's counsel

15  stated he was willing to dispense with any examination of the Plaintiff on the

16  withdrawn claim if her counsel would simply execute a stipulated dismissal of the

17  Fifth Cause of Action, which stipulation was immediately presented to her.

18  Plaintiff's counsel refused to do so. When asked why, Plaintiff's counsel refused to

19  provide an answer, and Boeing's counsel indicated he had no choice but to proceed

20  to examine Ms. Novak on the still pending claim. (**Novak Depo., Vol. II, pp. 330-**

21  **340; attached as Ex. "O" to O'Brien Decl. at ¶ 24.**) [5]

22          What then ensued was nothing short of incredible. First Ms. Novak

23  reiterated, on the record, what her counsel previously and repeatedly had been

24  representing for the last few weeks –*i.e*., , that she did not want to pursue the Section

25  ────────────────

26  [5] At another point in the deposition, Plaintiff's counsel was specifically asked by Boeing's
    counsel whether she had any new clients that would be added to the lawsuit, or to substitute in to
27  replace Ms. Novak on the Labor Code Section 2802 reimbursement claim, and she initially
    refused to answer, and later off the record represented that her offices did not have any new clients
28  as of that date. (**O'Brien Decl., at ¶ 26; Novak Depo., Vol. II, pp. 346-347.**)

1    2802 reimbursement claim, either individually or as a class representative.  She then

2    admitted under oath: (1) That she had previously been offered, as far back as 2004

3    by her Boeing supervisor, the opportunity to have Boeing pay for her home office

4    internet and telephone service expenses (or alternatively be provided a Boeing

5    issued cell phone), which she turned down; ( 2) That she used her existing personal

6    home Internet provider service that she also used for personal matters, to log into

7    Boeing's network when working from home; (3) That she <u>never</u> asked, requested or

8    sought from Boeing, at any time, payment or reimbursement for these home office

9    expenses despite being aware of Boeing's business reimbursement expense policies;

10   (4) She never bothered, nor was asked by her counsel, to look for responsive

11   documents that would support the reimbursement claim despite having first raised

12   the issue of amending her complaint to assert it back in December 2009; and (5)

13   That she didn't have any responsive documents in her possession that would support

14   her earlier claim of damages of $130 per month on that reimbursement claim. (***See***

15   ***Id.*, Novak Depo., Vol. II at pp. 330-393.**)  **In sum, Ms. Novak admitted at**

16   **deposition that she possessed no factual basis or support to have originally**

17   **brought the Section 2802 reimbursement claim in the first place!**

18         Two days after of Ms. Novak's deposition -- on February 17, 2011--

19   Boeing' counsel sent Plaintiff's counsel an e-mail requesting that in light of

20   Plaintiff's undisputed deposition testimony, that their offices immediately execute

21   the attached joint stipulated dismissal of the Fifth Cause of action to avoid potential

22   Rule 11 sanctions for continuing to pursue a "headless" class action. (**O'Brien**

23   **Decl., ¶ 30; Ex. "Q."**)

24         The following day, February 18, 2011, Plaintiff's counsel sent two e-

25   mails announcing they wanted to amend their complaint, this time to add, not one,

26   but three new potential individual plaintiffs and class representatives, all of whom

27   were former Boeing employees. The e-mails stated that a former Boeing employee

28   named "Victor Clement" would be added as class representative to all existing five

1   causes of action that had been asserted by Ms. Novak, and that former employees
2   "Leslie Heard" and "Jackie Velez" would be added <u>only</u> to the Fifth Cause of
3   Action for internet/telephone reimbursement that Ms. Novak was no longer
4   pursuing. Plaintiff's counsel asked if Boeing would stipulate to such amendment in
5   return for Ms. Novak individually dropping her reimbursement claim. Again no
6   draft proposed amended complaint was provided to Boeing's counsel to review or
7   consider.  (**O'Brien Decl., ¶ 31; Ex. "R."**)

8             Boeing's counsel responded with an e-mail on February 23, 2011,
9   stating that Boeing would not "horse trade" a dismissal of the Fifth Cause of Action
10  by Ms. Novak in return for stipulating to the addition and substitution of new class
11  representatives, since Ms. Novak and her attorneys already had repeatedly agreed
12  that she did not want to pursue the claim.  Further, because it was clear from her
13  recent deposition testimony that Ms. Novak never had standing or basis in the first
14  place to assert the reimbursement claim, it was apparent that her counsel was been
15  stonewalling and refusing to dismiss the claim <u>solely</u> to use Ms. Novak as a
16  "placeholder" until they could solicit a new class representative to take her place.
17  (**O'Brien Decl., ¶ 32; Ex. "S," pp. 147-148**.)

18            Boeing indicated before it would consider stipulating to an amendment
19  of the pleadings to allow the intervention of new class representatives and further
20  amendment, that: (1) Boeing's counsel be provided with a copy of the proposed
21  amendments to review; (2) Boeing be  provided the factual basis for these three
22  newly disclosed individuals to intervene and substitute in as new class
23  representatives, and specifically why their interests were not already adequately
24  represented by Ms. Novak as to at least the first four causes of action she was still
25  asserting on behalf of herself and as a class representative; (3) the immediate
26  dismissal of the Fifth Cause of Action by Ms. Novak; (4) Plaintiff's counsel agree
27  that Boeing can take and complete (and obtain all documents in discovery) of any
28  newly added class representatives before any Boeing depositions take place in

1  discovery, assuming the amendment is allowed by the Court; and (5) Plaintiff's

2  counsel to agree to a continuance of at least an additional three months of all dates

3  in the Court's current Scheduling Order. (**O'Brien Decl., ¶ 33; Ex. "S," p. 149.**)

4      As expected, and consistent with Plaintiff's counsels' past practice, no

5  response to this "meet and confer" took place, and no draft of a proposed amended

6  complaint was ever provided for review. Instead Plaintiff's counsel went ahead and

7  unilaterally filed the instant Motion and now has submitted a proposed Second

8  Amended Complaint which **differs** than the one they had previously represented to

9  Boeing they planned to file in their previous February 18 e-mails.[6] (***Id.*, at ¶ 34**.)

10     In one last conciliatory effort to avoid this Motion, Boeing's counsel

11  wrote on March 3, 2011, to Plaintiff's counsel and offered to stipulate to the

12  proposed amendment in return for a few minor conditions: (1) Boeing would have

13  thirty (30) days to file a responsive pleading; (2) that Plaintiff's counsel agree to a

14  continuance of the current Scheduling Order dates (*e.g.*, trial, motion and discovery

15  cut-off, *etc*.) because three new plaintiffs asserting individual claims were being

16  added and the class definitions were being expanded, and this would require

17  substantial additional discovery and the potential of three more summary judgment

18  motions to be prepared by Boeing; (3) that Boeing be given priority in taking and

19  completing the depositions of the three newly added plaintiffs and class

20  representatives; and (4) that Ms. Novak agree to currently execute a separate

21  stipulated dismissal of her Fifth Cause of Action as to herself. Plaintiff's counsel

22  wrote back the following day and stating that they would not agree to these

23  conditions. (**O'Brien Decl., ¶ 35; Ex. "T."**)

24

25  _____

26  [6] The key differences are that the original Plaintiff (Ms. Novak) is no longer asserting her Fifth Cause of Action for reimbursement under Labor Code § 2802 (and all three new proposed plaintiffs, not just two, would substitute in for her on that claim). Additionally, Leslie Heard and

27  Jacqueline Velez would be added with Ms. Novak to only her Second and Fourth Causes of Action; and Victor Clement would be added to Ms. Novak on her first four claims for relief.  (***See* Proposed Second Amended Complaint**.)

28

- 14 -

1   **III.**      <u>**LEAVE TO AMEND SHOULD BE DENIED**</u>

2           Motions to amend pleadings are governed by Federal Rule of Civil

3   Procedure, Rule 15(a)(2).  Although Rule 15 embodies a  liberal policy toward

4   granting leave to amend, the Ninth Circuit has explained that amendment is not to

5   be granted "automatically," and that "liberality" is subject to "several limitations."

6   *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989); *Xyratex*

7   *Technology, Ltd. v. Teradyne, Inc.*, 2009 U.S. Dist. LEXIS 127028, *9 (C.D. Cal.

8   April 10, 2009).

9           The Court must therefore determine the propriety of this most recent

10  motion to amend by ascertaining the presence of four factors: (1) bad faith; (2)

11  undue delay; (3) prejudice to the opposing party; and/or (4) futility.  *Griggs v. Pace*

12  *American Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999); *Xyratex Technology*, 2009

13  U.S. Dist. LEXIS 127028 at*9.

14                **A.**      <u>**Plaintiff And Her Counsel Have Acted in Bad Faith and**</u>

15                         <u>**Engaged in Deliberate "Stonewalling."**</u>

16           While some courts hold that delay, alone, is not enough to support a

17  denial of a motion for leave to amend, <u>unexplained</u> delay, alone, or coupled with

18  bad faith, <u>is</u> a sufficient basis for denying leave to amend.  *AmerisourceBergen*

19  *Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006); *Lockheed Martin*

20  *Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999)(noting that

21  delay is especially relevant to amendment analysis when no reason is given for the

22  delay).

23           Moreover, it does not matter if a court's prior pre-trial order set forth a

24  longer deadline by which a party could amend his/her pleading. *See*

25  *AmerisourceBergen, supra*, 465 F.3d at 951-952 (Ninth Circuit affirmed trial court's

26  denial of motion to amend as untimely even when motion was filed well before pre-

27  trial deadline set by court);  *JJCO, Inc. v. Isuzu Motors Am., Inc.*, 2009 U.S. Dist.

28  LEXIS 105643 , *12-13, 2009 WL 3818247, *5 (D. Haw. Nov. 12, 2009)( "[A]

1   judge may deny motion for leave to amend as untimely even if it complies with a

2   court-ordered deadline, if there is justification for the denial").

3            Here bad faith has been demonstrated by Plaintiff and her counsels': (1)

4   refusal to immediately dismiss the Fifth Cause of Action asserted by the original

5   Plaintiff, Ms. Novak (including "stonewalling" discovery as to that claim for

6   months), when they knew she did not have standing to assert the claim in the first

7   place, either individually and as a class representative; (2) the present attempt by

8   class counsel to add new plaintiffs and class representatives to a claim that should

9   already have been dismissed, and for which none can show they possess standing,

10  nor a legal or factual basis to assert the claim (*see* **Section III. C.** *infra*); and (3)

11  providing no explanation or reasons as to why the current original class

12  representative (Ms. Novak) will not adequately protect the newly proposed

13  plaintiffs' interests on the remaining first four causes of action on which she is still

14  serving as a class representative (*see* **Section III.B.,** *infra*).

15           All that the proposed amendment is designed to do is substantially and

16  unnecessarily increase litigation costs to Boeing, and allow class counsel to

17  perpetuate meritless claims.  This has been the *modus operandi* of class counsel

18  from the inception of the case -- to improperly and unethically utilize the judicial

19  process as a vehicle to conduct discovery to "troll" for and solicit new class

20  representatives when discovery uncovers that their original client and class

21  representative had no standing or factual or legal basis to assert her claims, either

22  individually or as a class representative, in the first place.

23      **B.    Boeing Will Suffer Prejudice If The Proposed Amendment Is**

24             **Allowed, While Plaintiff Will Not If The Proposed**

25             **Amendment Is Denied.**

26           By far the most important and most common reason for denying leave

27  to amend is prejudice.  "Prejudice is the touchstone of the inquiry under rule 15(a)."

28  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  Many

1   courts, in fact, presume prejudice where a motion to amend is brought late in the

2   litigation. *Solomon v. North American Life & Casualty Ins. Co.*, 151 F.3d 1132,

3   1139 (9th Cir. 1998)(motion "brought on the eve of the discovery deadline"

4   properly denied).

5          Courts therefore will properly deny a motion to amend when it appears

6   that plaintiff is using Rule 15 to make the complaint "a moving target," to "salvage a

7   lost case by untimely suggestion of new theories of recovery," to present "theories

8   *seriatim*" in an effort to avoid dismissal, **or** to "knowingly delay[] raising [an] issue

9   until the 'eve of trial'." *Zokari v. Gates*, 561 F.3d 1076, 1086 (10th Cir. 2009).

10   [Emphasis added.]  Additionally, courts will deny leave to amend to assert claims

11   that advance <u>different</u> legal theories and require proof of <u>different</u> facts.  *Jackson v.*

12   *Bank of Hawaii*, 902 F.2d 1385, 1387-1388 (9th Cir. 1990).

13          Likewise, "undue prejudice" occurs when an amendment would

14   produce a delay in the litigation – *i.e.*, delay in the operative trial schedule. Se*e*

15   *Jackson, supra*, 902 F.2d at 1387; *Loehr v. Ventura County Community College*

16   *Dist.*, 743 F.2d 1310, 1320 (9th Cir. 1984)(upholding District Court's denial of

17   motion to amend where claims sought to be added "would have substantially

18   complicated and delayed the case for new discovery, responsive pleadings and

19   considerations of state law");. *iRise v. Axure Software Solutions,* 2009 U.S. Dist.

20   LEXIS 102189, *26-27, 2009 WL 3615973 at *7 (C.D. Cal. Sept. 11, 2009)("Ninth

21   Circuit has found undue prejudice when an amendment would raise different legal

22   theories and require proof of different facts such that additional discovery would

23   have to be undertaken."); *IXYS Corp. v. Advanced Power Tech., Inc.*, 2004 U.S.

24   Dist. LEXIS 804, *8, 2004 WL 135861, *3 (N.D. Cal. Jan. 22, 2004)("[T]he need

25   for a party to conduct supplemental discovery or to consider a new line of legal

26   argument are classic sources of prejudice that have regularly proven sufficient to

27   defeat a motion for leave to amend.").

28          In the present case, the proposed amendment now offered by Plaintiff's

1  counsel dramatically alters the scope and nature of the case with respect to <u>both</u> the

2  individual and class allegations.  First, the insertion of three additional plaintiffs,

3  each raising their own set of individual and personal claims essentially <u>quadruples</u>

4  the amount of discovery and motion practice that Boeing will have to undertake, not

5  to mention causing significant confusion in the case.

6          Second, at this late juncture it now greatly expands the case to create

7  <u>three</u> different, distinct and separate potential classes: (1) an alleged wage and hour

8  overtime class based on misclassification of Plaintiff and "similarly situated"

9  Boeing employees  - *i.e.*, California-based Boeing computer Programmer/Analysts,

10  Level 4 (First and Third Causes of Action); (2) a separate alleged non-compliant

11  wage statement claim under Labor Code § 226 that now appears to no longer be

12  <u>limited</u> to Boeing computer programmers/analysts (Third Cause of Action); and (3)

13  a Labor Code § 2802 reimbursement claim (Fifth Cause of Action) that has nothing

14  to do with either of the first two classes – *i.e.*, whether Boeing computer

15  programmers/analysts similarly situated to Plaintiff were properly classified as

16  "exempt" from overtime, or received non-compliant wage statements.   (***See***

17  **Proposed Second Amended Complaint at ¶¶ 26-28**.) [7]

18          Conversely, the proposed new plaintiffs will suffer no prejudice if the

19  proposed amendments are denied. As a general matter, courts will not allow

20  previously unnamed class members to intervene until there has been "notice"

21  provided of actual certification of the class or a proposed class settlement. *See*

22  Schwarzer, Tashima & Wagstaffe, *California Practice Guide , Federal Civil*

23  *Procedure Before Trial*,  §7:197.2,  (Rutter Group 2011), citing to *Crawford v.*

24

25         [7] In contrast, the original Complaint was brought by a single named Plaintiff on behalf of

26  herself and a limited number of "similarly situated" California-based EO&T  Boeing computer
   programmers/analysts, Level 4. The theory originally alleged was that Plaintiff (and a discrete

27  putative class) was misclassified by Boeing as exempt, and therefore should have been eligible for
   additional wages and penalties under California's overtime laws. (***See* original Complaint at ¶¶**

28  **2-3, 17-20, 29.**)

1   *Equifax Payment Services, Inc.*, 201 F.3d 877, 880-881 (7th Cir. 2000). Neither

2   class certification nor a proposed class settlement has yet occurred in the case.

3        Further, there has been no showing made as to why Ms. Novak cannot

4   adequately represent the three proposed new plaintiffs' interests as a continuing

5   class representative on her remaining first four causes of action, or why their

6   intervention into the case is necessary. This is especially true where, as here, they

7   would be retaining the same counsel as Ms. Novak.  *See* FRCP Rule 24; *Montes v.*

8   *Brezenoff*, 85 F.R.D 130, 132 (S.D.N.Y. 1980)(individuals who were members of

9   proposed class and gave no concrete reason why the prosecution of the action on

10  their behalf would be benefitted if they were also named as plaintiffs and class

11  representatives, were properly denied right to intervene); *Jones v. United Gas*

12  *Improvement Corp*, 69 F.R.D. 398, 400-401(E.D. Pa. 1975)(intervention of new

13  class plaintiffs properly denied where proposed intervener's counsel was same as

14  existing class representative's counsel).

15       C.    **The Proposed Amendment, Which Attempts To Maintain**

16             **The Labor Code Section 2802 Reimbursement Claim, On its**

17             **Face Is "Futile," And Also Ultimately Will Be Dismissed**

18             **Because Each of The Proposed New Plaintiffs Lacks**

19             **Standing.**

20       Leave to amend may be denied if the proposed amendment is "futile"

21  or would be subject to dismissal.  *Saul v. United States*, 928 F.2d 829, 843 (9th Cir.

22  1991).  A proposed amendment is "futile" if no set of facts can be proved under the

23  amendment that would constitute a valid claim or defense.  *Miller v. Rykoff-Sexton,*

24  *Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *Johnson v. American Airlines, Inc.*, 834

25  F.2d 721, 724 (9th Cir. 1987)("futility" includes the inevitability of a claim being

26  defeated on summary judgment); *Masterson Marketing v. Lotus Int'l, Inc.*, 2008

27  U.S. Dist. LEXIS 17696, *3, 2008 WL 667412, *1 (S.D. Cal. Mar. 7, 2008)(in

28  assessing "futility," court applies same standard for motions to dismiss under

1    F.R.C.P. 12(b)(6)).

2              **1.      The Fifth Cause of Action Fails As A Matter of Law.**

3              Plaintiff does not cite a single case in her moving papers construing

4    Labor Code § 2802, let alone one where a court has allowed reimbursement for

5    these types of <u>optional</u> and <u>discretionary</u> "home office" expenses.  And even if such

6    a claim was legally viable (which it is not) there are no declarations submitted by

7    any of the three newly proposed plaintiffs that would support their assertion of the

8    claim, either individually or as class representatives.

9              There is good reason for these glaring omissions – like the original

10   Plaintiff and class representative (Ms. Novak), none of the new ones can make a

11   legal or factual showing to support his/her assertion of the Labor Code §2802 claim,

12   or even make such allegations or arguments in good faith. Ms. Novak admitted at

13   her deposition that she fully understood that Boeing's policy was not to pay for

14   these unnecessarily incurred expenses because the "Virtual Work and

15   Telecommuting" program under which she worked from home was optional, offered

16   as an accommodation to Boeing employees, and could be revoked any time. (**Novak**

17   **Depo., pp. 352-356, 379-385, attached as ex. "O" to O'Brien Decl.**)[8]

18             California Labor Code § 2802 is designed to provide indemnification

19   and/or reimbursement to employees for "all necessary expenditures … incurred by

20   the employee in direct consequence of the discharge of his or her duties...." The

21   reimbursement obligation is imposed on the employer in situations where the

22   expense is <u>forced</u> to be incurred by the employee, <u>not</u> where such an expense is

23   <u>discretionary</u> and incurred through an optional work-from-home arrangement

24

25   _____
         [8] Boeing written policy also makes clear that since 2009 its employees are responsible for
26   paying for the cost of Home Data Access ("HDA") charges (for additional home internet and
     telephone lines) that they use for their own convenience in voluntarily maintaining home offices.
27   These policies expressly advise Boeing employees that if they do not wish to pay for HDA
     services themselves so they can work from the convenience of their homes, Boeing will continue
28   to accommodate them by providing a work station at a Boeing facility. (**Robbecke Decl., ¶¶ 4-7,
     attached as Ex. "P" to O'Brien Decl. at ¶ 29.**)

1    offered by the employer.

2           Unlike the typical § 2802 case where the employer has <u>forced</u> or

3    <u>required</u> the employee to pay out-of-pocket for uniforms or tools required to

4    perform their work, or for use of their personal cars for work related transportation

5    (as opposed to commuting to and from work) without providing reimbursement for

6    mileage, this is a case where Boeing provides its employees with the <u>option</u> or

7    <u>election</u> to work from home. <u>It is not mandatory</u>. The alternative if the employee

8    does not want to pay for these discretionary expenses is for the employee to report

9    to work at a Boeing facility, where a fully equipped work station with all necessary

10   tools for performance of his/her job duties are provided (*e.g*., desk, telephone,

11   computer, internet connection, *etc*.). The Boeing "Virtual Office and

12   Telecommuting" program simply allows the employee the <u>option</u> of greater freedom

13   and convenience -- such as avoiding a commute -- and flexibility to set one's work

14   hours. It is no different than any other business that allows its employees the option

15   to work at home occasionally, while at the same time also providing them with a

16   permanent assigned and fully equipped work station at its business facility.

17          If class counsel's absurd and nonsensical construction of Labor Code §

18   2802 were adopted, then in this age of telecommuting all persons who <u>elect</u> to work

19   from home (even for one hour in the evening) would potentially have these same

20   claims for their discretionary expenditures as now alleged in the Fifth Cause of

21   Action, and the courts would be clogged with litigation. Plaintiff cannot point to one

22   case in which Section 2802 was used to claim reimbursement of home office

23   telephone or internet services when the employee had the <u>option</u> to either work at

24   home or at a company facility.

25          Another glaring omission is the lack of any allegation or evidence that

26   Plaintiff (or other putative class members) have made that would trigger a legal duty

27   under Section 2802 for Boeing to reimburse for such expenses. Section 2802

28   <u>requires</u> the employee to submit business expense reimbursement requests to

recover under the statute. The employer is <u>not</u> required to set up a system that "automatically" pays employees business expenses or ensure their payment even if the employees do not submit an expense reimbursement request.  *Wilson v. Kiewit Pacific Co*., 2010 U.S. Dist. LEXIS 133304, * 11-16. 2010 WL 5059522, * 3-6 (N.D. Cal. Dec. 6, 2010). And an employer cannot be held liable under Section 2802, unless the employer either knows, or has reason to know, that the employee has actually incurred the reimbursable expense.  *See Stuart v Radioshack Corp.*, 641 F. Supp. 2d 901, 904 (N.D. Cal. 2009).

Here, the Second Amended Complaint is devoid of any of the basic allegations necessary to assert a claim under  Labor Code § 2802; namely: (1) that the three new plaintiffs were <u>required</u> or <u>forced</u> by Boeing to work from home and incur these expenses; (2) that any of the three newly proposed class representatives ever sought, put in or <u>requested reimbursement</u> from Boeing for these expenses; <u>and</u> (3) that Boeing <u>knew or had reason to know</u> that they were incurring these expenses (as opposed to most likely using their already existing personal home internet and telephone connections lines, which most employees do).  All that is alleged are general and unspecific allegations they incurred home internet and telephone expenses which were not reimbursed – nothing more.  (***See* Proposed Second Amended Complaint at ¶¶ 24, 60-63.**)

> ## 2.    None of Three Proposed New Plaintiffs Can Show He/She Has Standing To Assert The Fifth Cause of Action.

In addition to the above, none of the newly proposed plaintiffs can, in good faith, make these required allegations without being subject to Rule 11 sanctions. All three newly proposed plaintiffs had permanent, assigned work stations at Boeing facilities that were fully equipped with computers, internet connections and telephones. For example, Ms. Velez worked at a Boeing facility the entire time, not from home; she did not even sign up under Boeing's "Virtual Office and Telecommuting" program. (**Peter M. Nelson Decl.**, ¶¶ 4-5.) And the other two

1    proposed new plaintiffs -- Victor Clement and Leslie Heard -- signed up

2    (voluntarily) as "telecommuters," which required them to work at a Boeing facility

3    at least three days a week at their permanently assigned and fully-equipped work

4    stations, and merely gave them the option to work from home two days a week if

5    that was what they wanted to do for their own personal convenience. The were <u>not</u>

6    <u>required</u> to work from home or at any other remote location, and their assigned work

7    stations at their respective Boeing facilities were available at all times for them to

8    come in to work. Mr. Clement even had a Boeing issued and paid for cell phone that

9    he used for work purposes outside of the office.  And finally, <u>none</u> of them ever

10   submitted reimbursement requests to Boeing for these expenses. (**See** **Declarations**

11   **of Michael R. Gygi at ¶¶ 1-5; and Kevin Ordahl at ¶¶ 1-7; Peter M. Nelson**

12   **Decl., ¶ 6.)**[9].

13            Finally, as a separate and independent ground, even if the Court were

14   to grant leave to file the proposed Second Amended Complaint under certain

15   conditions, it should do so only after first <u>completely</u> <u>dismissing</u> the Fifth Cause of

16   Action without leave to amend.  Dismissal is warranted because Ms. Novak did not

17   have standing to assert the claim in the first place (as evidence by fact that she

18   repeatedly represented she wanted to withdraw the claim on both her own behalf

19   and as a class representative, and her undisputed later deposition testimony).

20            It is well-established that when the original class representative did not

21   have standing, or a legal or factual basis, to bring the claim in the first place, the

22   court must dismiss the claim altogether, and not allow class counsel to continue to

23   search for a replacement class representative.  *See Stanford v. Home Depot USA,*

24   *Inc*., 358 Fed. Appx. 816, 819, 2009 U.S. App. LEXIS 25758, * 8-9 (9th Cir.

25   _____

26   [9] Boeing asks the Court to require each of the newly proposed plaintiffs and class
     representatives to submit sworn declarations or other sufficient evidence to refute these facts
     before allowing the Fifth Cause of Action to remain in the case.  Otherwise, Plaintiff will continue
27   to use factually/legally untenable claims to obtain Boeing employee contact information, troll for
     new and different claims and class representatives, and force Boeing to incur the considerable
28   expense of responding to class discovery.

2009)(upholding district court's grant of summary judgment against class plaintiff because of lack of factual basis and standing to assert claims, and also upholding district court's rejection of class counsel's argument that it should have been given time to find a new replacement class representative); *Sanford v. Memberworks*, 2008 U.S. Dist. LEXIS 79189, * 14 (S.D. Cal. Sept. 29, 2008)(granting defendant's motion to dismiss, and holding that case should be dismissed rather than held open to entertain motions to intervene by potential new class plaintiffs).

Here Plaintiff and her counsel knew that Plaintiff did not possess standing to assert her Fifth Cause of Action for reimbursement. They waited for 10 months to assert it after notifying Boeing it would be asserted, maintained it on behalf of Novak for only 3 months after amending the complaint to assert it, and then dropped it on behalf of Novak after they obtained Boeing employee contact information in discovery.  At the same time, they refused to stipulate to dismiss the claim despite repeated requests by Boeing to do so before Plaintiff's deposition. Instead they continued to stall and delay, even after her deposition testimony revealed she possessed no legal or factual basis to assert the claim in the first place. Then they continued to use her as "placeholder" while they desperately solicited new class representatives, which Boeing has now demonstrated also do not have standing and/or cannot possibly even plead it in a manner to survive a motion to dismiss (without making misrepresentations in their pleadings). Such procedural gamesmanship must be thwarted.  *See Bodner v. Oreck Direc*t, LLC, 2007 U.S. Dist. LEXIS 30408, *5-6, 2007 WL 2287873 (N.D. Cal. Apr. 25, 2007).

Accordingly, Boeing should not be put through the additional time and substantial legal expense (at least as to the Fifth Cause of Action) to defend against three more new plaintiffs who clearly have no standing (and/or a legal or factual basis) to assert this claim.

## IV.   IF THE COURT DOES ALLOW THE PROPOSED AMENDMENT, THEN IT SHOULD ONLY BE GRANTED UPON CERTAIN CONDITIONS

Although Boeing has made more than a sufficient showing as to why the proposed amendment should be denied, if the Court nevertheless allows the proposed amendment, Boeing requests that it should do so only upon certain conditions set forth below.[10]

1.   That the Fifth Cause of Action be dismissed, without leave to amend, unless the three new proposed plaintiffs can first make an <u>evidentiary showing</u> to refute Boeing's evidence submitted herein that none possess either standing to assert the claim, <u>and</u> also can allege the requisite elements to recover under the claim without violating FRCP Rule 11.

2.   That the various current dates set forth in the Court's current Scheduling Order each be continued and extended <u>by not less than six (6) months</u>;

3..   That Boeing be allowed thirty (30) days in which to file a responsive pleading to the Second Amended Complaint upon it being deemed filed;

4.   That class counsel, within 30 days, amend and supplement their the prior Disclosure Statement, including producing all documents that they intend to rely upon with respect to the newly added plaintiffs and the claims these new plaintiffs will be asserting in the Second Amended Complaint; and

5.   That the Court order that the newly added class Plaintiffs first sit for and have their depositions completed <u>before</u> Plaintiff's counsel is allowed to depose any Boeing witnesses.

---

[10] The Court has the discretion to grant leave upon certain conditions ameliorating any hardship or prejudice to the opposing party. Conditions typically imposed may be: (1) an extension of time within which to respond to the amended pleading; (2) extending the discovery cutoff to allow the opposing party additional time to investigate the new claim being asserted; (3) a continuation of the motion cut-off and trial dates; and/or (4) paying the costs incurred by the opposing party as a result of the delay. *See General Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1514 (9th Cir. 1995), *cert. denied*, 516 U.S. 1146 (1996).

1

## V.   **CONCLUSION**

2            Base on the forgoing, Boeing respectfully requests that the Court deny

3   Plaintiff's Motion for Leave to Amend.

4

5   DATED: March 7, 2011              PAYNE & FEARS LLP

6

7                                     By:/s/Sean A. O'Brien
                                          _____
8                                         DANIEL F. FEARS
                                          SEAN A. O'BRIEN
9
                                          Attorneys for Defendant
10                                        THE BOEING COMPANY

4825-4994-6120.1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28