# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

SUSAN NOVAK, an individual, and on behalf of all persons similarly situated and the general public,

    Plaintiff,

vs.

THE BOEING COMPANY, a Delaware corporation and DOES 1 through 100, inclusive,

    Defendant.

Case No.: SACV 09-01011-CJC(ANx)

**ORDER GRANTING DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION**

## I. INTRODUCTION AND BACKGROUND

Plaintiffs Susan Novak and Victor Clement (collectively, "Plaintiffs") filed suit on behalf of themselves and others similarly situated against Defendant The Boeing Company ("Boeing") for violations of California wage and hour laws. Plaintiffs assert

that Boeing misclassified them and the putative class members as "exempt" employees. As a result of this alleged misclassification, Plaintiffs contend that Boeing failed to pay overtime to them and failed to provide complete and accurate wage statements to them. The proposed class consists of a diverse group of current and former Boeing employees who all share the job title of "Programmer/Analyst, Level 4" ("Level 4"). Although the members of the class of approximately 274 employees share the same title and general job description, these employees have different job duties and tasks, supervisors, educational backgrounds, and work in different business units at different locations on different projects. On September 21, 2011, Boeing filed the present motion to deny class certification and/or strike class allegations. For the following reasons, the Court cannot certify the class.

## II. ANALYSIS

### A. Class Certification

"[D]istrict courts retain wide discretion in class certification decisions . . . ." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 594 (9th Cir. 2010) (en banc), *rev'd on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011). Federal Rule of Civil Procedure 23(a) sets forth four requirements for maintenance of a class action. Under that rule, a class may only be certified if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, the party seeking certification must show that the action falls within one of the three subsections of Rule 23(b). In this case, Plaintiffs seek certification pursuant to 23(b)(3). Rule 23(b)(3) permits certification of cases in which "the court finds that the questions of law or fact

common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs bear the burden of demonstrating that they have met the four requirements of Rule 23(a) as well as the predominance and superiority requirements of Rule 23(b)(3). *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001). Because Plaintiffs have failed to establish the commonality and predominance requirements, class certification must be denied.

### 1. Commonality

Class certification is inappropriate because Plaintiffs have not satisfied the commonality requirement as set forth in *Wal-Mart Stores, Inc.*, 131 S.Ct. 2541. To satisfy the commonality requirement, the plaintiff must establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc.* 131 S. Ct. at 2551. The "claims must depend on a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* In *Wal-Mart*, three female current and former Wal-Mart employees, who alleged that they suffered discrimination in the form of lower pay and fewer promotions than their male counterparts, sought to certify a class comprised of all female Wal-Mart employees across the country. The plaintiffs "d[id] not allege that Wal-Mart ha[d] any express corporate policy against the advancement of women. Rather, they claim[ed] that their local managers' discretion over pay and promotions [was] exercised disproportionately in favor of men, leading to an unlawful disparate impact on female employees" and that

Wal-Mart was liable for "its refusal to cabin its managers' authority" in spite of awareness of the effect. *Id.* at 2548 (citing 42 U.S.C. § 200e-2(k)). The Supreme Court held that certification was inappropriate because the injury the class members allegedly suffered, discrimination, happened at the hands of different supervisors in different regions without the link of a common practice or policy or common core of salient facts. The Court found that "[w]ithout some glue holding the alleged *reasons* for all those decisions together, it [would] be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." *Id.* at 2551.

In this case, all of Plaintiffs' current causes of action center on whether the members of the putative class were misclassified as "exempt" employees. Plaintiffs assert that the classes are appropriate for class treatment because "the main questions in the case: (1) whether Level 4's were improperly classified as exempt employees; and (2) whether Level 4's received wage statements that complied with California law, are common questions that will be determined based upon common facts." (Pls.' Opp. Def.'s Mot. Deny Certification, at 1.) More specifically, Plaintiffs assert that the following two questions within exemption analysis are common: (1) "whether [class members] customarily and regularly exercised discretion and independent judgment," and (2) "whether they were primarily engaged in exempt tasks."[1] (*Id.*)

Pursuant to California Labor Code Section 515, the Industrial Welfare Commission ("IWC")

> may establish exemptions from the requirement that an overtime rate of compensation be paid pursuant to Sections 510 and 511 for executive,

---

[1] Demonstrating that an employee regularly exercised discretion and independent judgment is a requirement of all three exemptions. The "exempt tasks" requirement is explicitly set forth in the administrative exemption, and the general exemption requirements of Section 515.

> administrative, and professional employees, provided that the employee is primarily engaged in the duties that meet the test of the exemption, customarily and regularly exercises discretion and independent judgment in performing those duties, and earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment.

Cal. Lab. Code § 515. The parties have identified three exemptions that are potentially applicable to the putative class: the administrative and professional exemptions promulgated by the IWC, Cal. Code Regs. tit. 8, §§ 11010, 11040,[2] and the computer software field employee exemption from the California Labor Code, Cal. Lab. Code § 515.5. The requirements for the administrative exemption that are relevant here are that the employee perform duties directly related to management policies or general business operations; customarily and regularly exercises discretion and independent judgment; and perform specialized or technical work requiring special training, experience, or knowledge or perform special assignments and tasks only under general supervision. Cal. Code Regs. tit. 8, §§ 11010, 11040. The relevant requirements for the professional exemption are that the employee be primarily engaged in a learned profession, which is work that either "requires knowledge of an advanced type in a field or science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study" or "work [that] is predominately intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such character that the output produced . . . cannot be standardized in relation to a given period of time," and who customarily and regularly exercises discretion and independent judgment. *Id.* The relevant requirements for the computer software field employee exemption is that the employee "is primarily engaged in work that is intellectual or creative and that requires the exercise of discretion and independent judgment;" be highly skilled and proficient in the theoretical and practical application of

---

[2] There appears to be a dispute about whether Section 11010 or 11040 of the code applies to Plaintiffs. The Court need not make this determination for purposes of this order, as the two sections are identical with respect to the exemptions at issue in this case.

highly specialized information to computer systems analysis, programming, or software engineering; and be primarily engaged in one or more of the "application of systems analysis techniques and procedures . . . to determine hardware, software, or system functional specifications," the "design, development, documentation, analysis, creation, testing, or modification of computer systems or programs . . . based on and related to user or system design specifications," and the "documentation, testing, creation, or modification of computer programs related to the design of software." Cal. Lab. Code § 515.5

Under California law, "[d]etermining whether or not all of the elements of [an] exemption have been established is a fact-intensive inquiry. The appropriateness of any employee's classification as exempt must be based on the actual job duties performed by that employee." *In re United Parcel Serv. Wage & Hour Cases*, 190 Cal. App. 4th 1001, 1014–15 (2010). Moreover "[n]o bright-line rule can be established classifying everyone with a particular job title as per se exempt or nonexempt—the regulations identify job duties not job titles." *Id.* at 1015. With respect to the computer software field employee exemption, "job title shall not be determinative of the applicability of this exemption." Cal. Lab. Code § 515.5. Although proving an exemption is an affirmative defense for which Boeing would bear the burden of proof at trial, for class-certification purposes, Plaintiffs bear the burden of demonstrating that misclassification, if it occurred, occurred on a class-wide basis. *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 946–48 (9th Cir. 2011) (holding that the district court properly held that when bringing a class action alleging a class-wide policy of misclassification that a plaintiff "'must be able to demonstrate . . . that misclassification was the rule rather than the exception.'" (quoting *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 482 (C.D. Cal. 2008))).

Boeing has presented evidence that demonstrates that the common questions asserted by Plaintiffs are not capable of common resolution. The position of Level 4

Programmer/Analyst is a broad job category, which Boeing uses to classify a wide variety of employees. The putative class is comprised of individuals who work in widely varied groups and teams, under different conditions, and who have different supervisors, job duties, and educational backgrounds; these differences would likely lead to different results among the class with respect to application of the exemptions. As in *Wal-Mart*, Plaintiffs have failed to demonstrate the proof, or "glue" holding the claims together, that would produce "a common answer to the crucial question:" was an employee misclassified as exempt. The following small sampling of putative class members demonstrates this diversity:

Plaintiff Susan Novak possesses a bachelor's degree in Fine Arts and had little programming experience at the time she was hired. (Novak Decl. ¶ 2.) Prior to 2009, Mrs. Novak worked primarily on web applications, and stated in her declaration that she primarily performed rudimentary tasks that could have been performed by Level 1 and 2 programmers, under "all-encompassing oversight" from Gavin McCarter, the designer and architect of the programs she worked on, and employed little to no discretion or independent judgment. (*Id. passim*.)

Plaintiff Victor Clement spent "a vast majority of [his] time specifically working on the Program Information Management Systems ("PIMS") project," engaged in routine programming on the program managed by his team leader and designed by the team's architect. (Clement Decl. *passim.*) Mr. Clement's duties primarily included basic coding and debugging, and administrative tasks associated with that, such as attending meetings, documenting any changes he made, assisting end users with the program, and testing the program. (*Id.*) He asserts that he was closely supervised, wrote code dictated by Boeing's end results and industry practices, and lacked discretion. (*Id.*)

In contrast, putative class member Wei Liu worked in the Product Data Management systems group under the supervision of Michael Gygi. This group "is responsible for supporting, sustaining and enhancing highly technical and complex mathematical and engineering software applications used by Boeing engineers for the design, assembly and release process for various military aircraft, such as the B-1-B bomber and C-17 cargo transport." (Liu Decl. ¶ 4.) Wei Liu has a B.S. degree in fluid dynamics from Tsing Hua University, two M.S. degrees, one in fluid dynamics from Tsing Hua University and the other in computer engineering from the University of Southern California ("USC"), and a Ph.D. in Aerospace Engineering from USC. (*Id.* ¶ 5.) Wei Liu has worked on at least fifty different projects, functioning in many as a team lead, been involved in design and architecture of programs, and was given "great discretion and latitude" by supervisors. (*Id.* ¶¶ 6, 10–12.) Wei Liu has also stated that the Level 4's on the team "often worked on different projects, meaning that [they did not] all perform the same job functions and tasks at the same time" and that the tasks performed could "differ greatly." (*Id.* ¶ 13.)

Also in contrast to Plaintiffs and to Wei Liu, employee Donald Gage works for the IT/Finance group as part of the "Accounting/Finance" team. (Gage Decl. ¶ 1.) Mr. Gage has a B.S. in management from USC, a M.B.A. from California State University at Fullerton, and a certification in project management from the University of California at Irvine. (*Id.* ¶ 3.) Mr. Gage's team "develops and maintains existing site systems, and provides computer software applications for a variety of financial and accounting systems throughout different business units within Boeing, with a focus on regional business partners located in Southern California." (*Id.* ¶ 5.) Mr. Gage has worked both as a team lead and member "engag[ing] primarily in the design, development and support of computer software that allows for the processing and analysis of financial and accounting data." (*Id.* ¶ 6.) He maintains that because his supervisor lacks his technical expertise, he is "allowed a great amount of discretion and independence in performing [his] job duties

and functions" and has "extremely minimal" direct oversight and supervision. (*Id.* ¶ 11.) Finally, like Wei Liu, Mr. Gage asserts in his declaration that he and the other Level 4's on his team have functions and tasks that "can differ greatly." (*Id.* ¶ 12.)

It is clear from the statements of these workers that they perform different amounts of exempt and non-exempt duties, have different levels of supervision, employ different amounts of independent judgment and discretion, work in different teams and environments, and have vastly different educational backgrounds. This indicates that for all of these aspects of the exemptions, the Court would have to engage in individualized rather than common inquiry. Because of these differences, determination of whether or not one Level 4 Programmer/Analyst should be considered exempt would be insufficient to make that determination for another. For example, with respect to the "discretion and independent judgment requirement," Mr. Clement and Ms. Novak represent that because they engaged in rudimentary tasks with precise instructions dictated by supervisors or best practices, that they exercised little to no discretion and independent judgment. However, Wei Liu and Mr. Gage both represent that because of their high level of expertise and the lack of such expertise on the part of their supervisors, they regularly exercised great amounts of independent judgment and discretion. A finding with respect to either Plaintiff would not apply to either Wei Liu or Mr. Gage. The same is true regarding the amount of time spent on exempt tasks: Plaintiffs assert that they spent little to no time performing duties that would qualify as exempt, and attempt to extrapolate that experience to all Level 4's. However, Wei Liu and Mr. Gage both indicate that they perform tasks that would appear to qualify as exempt under one or more exemption, and indicate that their tasks and duties would vary greatly even from other Level 4's on their team, indicating that extrapolation from their experience to other Level 4's would be inappropriate.

Plaintiffs have not presented arguments or evidence to counter Boeing's assertions regarding these relevant differences among class members. Nor have Plaintiffs demonstrated that the questions asserted as common, "discretion and independent judgment" and time spent on "exempt tasks", in spite of these differences, are subject to common proof. Further, Plaintiffs have not shown that a fact finder may determine whether or not other class members were misclassified by extrapolating based on evidence presented regarding whether the class representatives were misclassified. District courts in the Central District of California have previously denied class certification in exemption cases because of a plaintiff's failure to demonstrate the existence of "common evidence to support extrapolation from individual experiences to a class-wide judgment that is not merely speculative." *Marlo*, 251 F.R.D. at 486; *see also, e.g.*, *Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 241–48 (C.D. Cal. 2007); *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 250–53 (C.D. Cal. 2006); *Velazquez v. Costco Wholesale Corp.*, No. SACV 11-00508, 2011 WL 4891027, at *3–9 (C.D. Cal. Oct. 11, 2011); *Nguyen v. BDO Seidman, LLP*, No. SACV 07-01352, 2009 WL 7742532, at *2–*7 (C.D. Cal. July 6, 2009).[3] Affirming the decertification in *Marlo*, the Ninth Circuit agreed with the district court that a policy of classifying a particular group of workers as exempt is insufficient to establish commonality for an issue of misclassification "because the policy may have accurately classified some employees and misclassified others." *Marlo*, 639 F.3d at 948. As with these prior cases, Plaintiffs have failed to provide any evidence of commonality other than that the employees were all identified as "Programmer/Analyst, Level 4" and all classified by Boeing as exempt. These common characteristics alone are insufficient to establish that the issue of exemption, the central issue in this case, may be resolved with common proof.

---

[3] These cases reached such holdings in the context of predomination analysis. However, the decisions, with the exception of *Velazquez*, were reached prior to *Wal-Mart* and, thus, did not employ the more rigorous commonality inquiry set forth by the Supreme Court in that case. In *Velazquez*, the district court presumed that plaintiffs could satisfy the Rule 23(a) requirements including commonality, but, citing *Wal-Mart*, questioned the plaintiffs' ability to demonstrate commonality under the standard set forth in that case. *Velazquez*, 2011 WL 4891027, at *3 & n.1.

## 2. Predominance

Class certification is also inappropriate here because individual issues predominate over common issues. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). It is similar to the commonality requirement of Rule 23(a)(3). *Id.* at 623 n.18. But predominance is a more rigorous requirement than the Rule 23(a)(3) commonality prerequisite. *Hanlon*, 150 F.3d at 1019. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues." *Mevorah v. Wells Fargo Home Mortg. (In re Wells Fargo Home Mortg. Overtime Pay Litig.)*, 571 F.3d 953, 959 (9th Cir. 2009). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted).

Plaintiffs argue that the following common questions predominate over "all Level 4's": (1) "whether they exercised the requisite 'discretion and independent judgment' over matters of significance," (2) "whether they were primarily engaged in exempt tasks."[4] (Pls.' Opp. Def.'s Mot. Deny Certification, at 1.) However, Plaintiffs have failed to demonstrate that these two questions are common questions, let alone that they predominate over individual questions. Indeed, the employee declarations presented by both Plaintiffs and Boeing reveal that the three exemptions raise a multitude of issues that would have to be tried on an individual basis. Based on the differences between class members, to determine whether one or more of the exemptions apply, the following

---

[4] Plaintiff's also present a third common question: "if Level 4's were improperly classified as exempt employees, did their wage statement comport with California law." (Pls.' Opp. Def.'s Mot. Deny Certification, at 1.) This question may be resolved class-wide, but it is derivative of, dependent upon, and minor in comparison to, the issue of misclassification.

-11-

questions, among others, would require individualized assessment: (1) whether an employee regularly exercised independent judgment and discretion; (2) whether an employee was primarily engaged in exempt tasks; (3) whether an employee performs under only general supervision, Cal. Code Regs. tit. 8 §§ 11010, 11040 (administrative exemption); (4) whether an employee performs specialized or technical work requiring special training, experience or knowledge, *id.* (same); (5) whether an employee is "primarily engaged in the performance of work requiring knowledge of an advanced type in a field or science or learning customarily acquired by a prolonged course of specialized intellectual instruction an study," *id.* (professional exemption); and (6) whether "[t]he employee is highly skilled and is proficient in the theoretical and practical application of highly specialized information to computer systems analysis, programming, or software engineering," Cal. Lab. Code § 515.5 (computer software exemption). These individual questions clearly predominate over what few common issues Plaintiffs contend may exist.

## III. CONCLUSION

Plaintiffs have failed to establish that there exists commonality and that common issues predominate. Accordingly, Boeing's motion to deny class certification is GRANTED.

DATED: December 19, 2011

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE